# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STEPHANIE WARNER, )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>**Commissioner of Social Security,** )<br>)<br>    **Defendant.** ) | 1:04CV00714 |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephanie Warner seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claim for Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on June 14, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on August 7, 1973, and was 27 years of age on her alleged onset date of disability. She has less than a high school education and past relevant work as a textiles packer and a cashier. Plaintiff alleges disability as of August 11, 2001, due to lumbar disc disease, headaches, and depression.

## The Administrative Proceedings

Plaintiff filed applications for Disability Insurance Benefits and SSI on January 23, 2002, alleging disability as of August 11, 2001, due to lumbar disc disease, headaches, and depression.[1] The claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on June 30, 2003, before ALJ Charles F. Biscoe in Greensboro, North Carolina, and a decision denying benefits was issued on August 29, 2003. Plaintiff filed a request for review, and on June 14, 2004, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the disability insured status requirements of the Social Security Act on August 11, 2001, her alleged onset date of disability, and continued to meet them through at least August 29, 2003, the date of the ALJ's decision.

2. Plaintiff has not engaged in substantial gainful activity since August 11, 2001, her alleged onset date of disability.

3-4. Plaintiff suffers from severe lumbar disc disease, as well as non-severe headaches and depression, but does not have an impairment, or combination of

---

[1] Plaintiff filed a previous application for Disability Insurance Benefits on September 6, 1991, which was denied initially and on reconsideration. Plaintiff did pursue a hearing before an ALJ.

-2-

impairments, that meets or equals one listed in Appendix 1, Subpart P, Regulations Number 4.

5. Plaintiff's allegations regarding her limitations are not totally credible.

6-7. Considering all of the medical evidence in the record concerning the severity of Plaintiff's impairments, Plaintiff retains the residual functional capacity to perform "sedentary" work, so long as she is limited to stooping and crouching on an occasional basis.

8. Plaintiff is unable to perform her past relevant work as a textiles packer or a cashier.

9-12. Plaintiff is a "younger individual," with a "limited education," no transferable skills and/or transferability of skills is not an issue, and the residual functional capacity to perform substantially all of a full range of sedentary work.

13-14. Based on Plaintiff's age, education, and work experience, as well as a residual functional capacity for substantially all of a full range of sedentary work, Medical-Vocational Rule 201.24 directs a finding that Plaintiff is not disabled.

15. Plaintiff was not under a "disability," as defined by the Social Security Act, *for any twelve-month period* through August 29, 2003, the date of the ALJ's decision (emphasis in original).

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520 & 416.920 (2004). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches

the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on August 11, 2001, her alleged onset date of disability, and continued to meet them through at least August 29, 2003, the date on which the ALJ issued his decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 11, 2001, her alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffered from severe lumbar degenerative disc disease, as well as non-severe headaches and depression, but that she did not have an impairment, or combination of impairments, that met or equaled the ones listed in Appendix 1, Subpart P, Regulations Number 4. At step four of the sequential evaluation, the ALJ found that, although Plaintiff retains the capacity to perform substantially all of a full range of sedentary work, she is unable to return to her past relevant work as a textiles packer or a cashier. Proceeding to step five, the ALJ found, based on Plaintiff's age, education, and past work experience, as well as her residual functional capacity for substantially all of a full range of sedentary work, that Medical-Vocational Rule 201.24 directs a finding that Plaintiff was "not disabled," as defined by the Social Security Act, for any *twelve-month period* through August 29, 2003, the date of the ALJ's decision.

In this action for judicial review, Plaintiff makes numerous assignments of error. Plaintiff first alleges that the ALJ's findings at step two of the sequential evaluation are not supported by substantial evidence for two reasons. (Pleading No. 11 at 4-7.) In the first place, Plaintiff contends that her testimony at the hearing and the medical evidence of record demonstrate that her migraine headaches constitute a "severe" impairment. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c) (2004). The Fourth Circuit has held that in order to find an impairment non-severe, the impairment must be "a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)(emphasis in original)(citations omitted). Plaintiff bears the burden of proving the severity of her impairments. *See* 20 C.F.R. §§ 404.1512(a) & 416.912(a) (2004); *Hunter*, 993 F.2d at 35.

Plaintiff contends that her headaches began in about June of 1999, approximately two or three months after she was in an automobile accident. (Tr. at 242.) At the hearing Plaintiff testified that her headaches had occurred over a 4-year period without improvement, and that she planned to seek treatment as soon as her doctor returned from vacation. *Id.* at 242-43. Plaintiff further testified that her headaches caused pain that was a "10" on a scale of 1 to 10, as well as photo phobia, phono phobia, nausea, and vomiting. *Id.* at 245. She stated that Imitrex provided some relief from these symptoms, but that she slept for 5 or 6 hours after

taking an Imitrex nasal spray each morning. *Id*. at 246. The ALJ stated in his opinion that there was little information in the medical record to support Plaintiff's claims that she suffers from migraine headaches sufficiently debilitating to be considered a "severe" impairment. The Court agrees.

In the first place, the Court notes that Plaintiff continued to work as a textiles packer for a period of over two years after she alleges that her migraine headaches began. *Id.* at 243.[2] Additionally, Plaintiff never sought medical treatment on a regular basis for her migraine headaches. On December 28, 1999, Plaintiff mentioned to Dr. Ashish C. Shah, her treating physician, that she had headaches which came "from time to time. . . . She goes to bed and feels better and rest helps her." *Id.* at 167. Dr. Shah felt that Plaintiff's headaches were most likely attributable to anxiety and gave her a sample pack of BuSpar. *Id.* Plaintiff did not seek treatment for her headaches again until August 23, 2000, when she was evaluated by Dr. James U. Adelman, a headache specialist. Dr. Adelman diagnosed Plaintiff with post-traumatic headaches, recommended that Plaintiff discontinue caffeine, and started her on Zoloft and Amitriptyline. *Id.* at 165. Although Dr. Adelman asked Plaintiff to schedule a followup visit in one month, Plaintiff submitted no further medical records from Dr. Adelman to the Commissioner. Finally, on January 22, 2003, Dr. Edward Hawkins noted that Plaintiff

---

[2] ALJ: How did you manage to keep working for another two years with the headaches?

P: I had to do what I had to do.

was "having a lot of trouble with headaches. She feels sick with them." *Id.* at 171. There is no evidence in the record that Plaintiff sought further treatment for headaches.

Plaintiff argues that, "by stating that the 'record does not emphasize or elaborate on her headaches,' the ALJ indicates that his finding is not based on the evidence in the case record." (Pleading No. 11 at 5, citing tr. at 17.) The fallacy of this argument, of course, is that the ALJ's determination that Plaintiff is not suffering from severe migraine headaches is grounded firmly in the evidence – in this case, Plaintiff's testimony concerning the severity of headaches, her work history with the headaches, and her failure to mention severe headache symptoms during numerous doctors' visits spanning a four-year period. Accordingly, the Court holds that the ALJ's finding on this point is supported by substantial evidence.

Plaintiff's next argument before the Court is that the ALJ erred in not finding Plaintiff's depression to be a severe impairment. On this point, Plaintiff argues that the Appeals Council erred in not granting review after receiving new and material evidence, in the form of an opinion of Dr. Rupinder Kaur, Plaintiff's treating psychiatrist, that Plaintiff's depression caused her to be completely and totally disabled. This argument is without merit.

The Appeals Council will grant review where new and material evidence is submitted that makes the ALJ's action, findings or conclusions contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970 (2004). In this case, the Appeals Council considered the contentions raised in Plaintiff's request for review and incorporated the new evidence into the record. Nevertheless, the Council concluded that the arguments and evidence did not

provide a basis for changing the ALJ's decision and denied review. (Tr. at 5-8.) When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991). The reviewing Court must then look to the record as a whole, including the new evidence, in order to determine whether the ALJ's decision is supported by substantial evidence. This Court concludes that none of the new evidence submitted to the Appeals Council renders the ALJ's decision unsupported by substantial evidence.

In the first place, the Court notes that Dr. Kaur's "medical opinion" consists solely of a bald statement that Plaintiff has a major depressive disorder and "is totally disabled & is unable to perform gainful employment." Tr. at 227; *see also* tr. at 228. Under the Regulations, the opinions of a physician that a claimant is unable to do work of any kind are entitled to little weight, since they offer conclusory statements on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) & 416.927(e) (2004). *See also Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner* ("SSR 96-5p"). Indeed, while physicians are an important source of "medical opinions,"[3] their opinions as to whether an individual is "disabled" or "unable to work" "can never be entitled to controlling weight or given special significance." SSR 96-5p. Therefore,

---

[3] "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) (2004) and SSR 96-5p.

to the extent Dr. Kaur opined that Plaintiff is unable work, such opinion is not entitled to special deference.

Additionally, the Court notes that there is little, if any, evidence in the record that Plaintiff suffered from significant symptoms of depression prior to consulting Dr. Kaur in November of 2003. There is no evidence in the record that Plaintiff sought medical treatment for depression. Although Plaintiff took Zoloft, an antidepressant, this medication was prescribed by Dr. Adelman for headaches. (Tr. at 165.) Indeed, Dr. Adelman gave Plaintiff a Zung depression SDS index score of "45 – normal." *Id.* at 164. Plaintiff did not testify at the hearing that she was currently experiencing depression, or that she had suffered from depression in the past. Finally, the ALJ found that Plaintiff's alleged depression might cause mild restrictions in her activities of daily living; mild restrictions in her social functioning; mild deficiencies of concentration, persistence, and pace; and had caused no episodes of decompensation. *Id.* at 18.

Accordingly, the Court finds that the ALJ's findings that Plaintiff's headaches and depression are not "severe" impairments are not in error.

Plaintiff's next argument before the Court is that the ALJ failed to follow established agency procedures in determining her residual functional capacity. Specifically, Plaintiff argues that the ALJ erred in failing to satisfy his duty of explanation in relation to Plaintiff's residual functional capacity because Social Security Ruling 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* ("SSR 96-8p") requires the ALJ to make a function-by-function determination of Plaintiff's ability to

-10-

Case 1:04-cv-00714  Document 14  Filed 06/28/05  Page 10 of 18

sit, stand, walk, lift, carry, push and pull, before her residual functional capacity can be expressed in terms of an exertional category. Plaintiff contends that remand is appropriate for further assessment and explanation of Plaintiff's residual functional capacity. (Pleading No. 11 at 8-11.)

The Court finds no error. The ALJ found that Plaintiff could perform a full range of sedentary work, so long as she was limited to occasional stooping and crouching. (Tr. at 19.) The definition of a full range of sedentary work includes specific limits on the seven exertional activities listed in SSR 96-8p. The regulations provide that sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a) & 416.967(a) (2004). The regulations further define sedentary work as follows: "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* These administrative statements fully address the seven exertional activities required by SSR 96-8p.[4]

In this case, the ALJ stated that "[Plaintiff] retains the residual functional capacity for at least sedentary work," and then goes on to outline the exertional requirements of sedentary

---

[4] By negative implication, sedentary work does not require pushing and pulling or arm and leg controls.

work discussed above.[5] (Tr. at 19.) This Court has held that the restatement of the definition of sedentary work serves no useful purpose in the adjudication of a claimant's claim. Therefore, requiring the ALJ in this case to go a step further and perform the pointless exercise of making specific findings that Plaintiff can lift 10 pounds, sit most of the time, and do a certain amount of walking and standing, is clearly a pointless exercise which is wasteful of the Commissioner's (and ultimately this Court's) resources.

Plaintiff's next argument before the Court is that the ALJ failed to give controlling weight to the opinion of Dr. Kyle L. Cabbell, Plaintiff's treating physician, that Plaintiff should engage in "no lifting, bending, squatting, stooping, or lifting[sic]." (Pleading No. 11 at 12-14.) The Court finds that, contrary to Plaintiff's assertions, the ALJ incorporated significant components of Dr. Cabbell's recommendations in Plaintiff's residual functional capacity.

As Plaintiff notes, the regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable

---

[5] Plaintiff argues that "ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make finding of fact. . . ." *(*Pleading No. 11 at 11, *citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)(citations omitted). Plaintiff's reliance on this citation is misguided. In this case, the ALJ clearly made a finding of fact as to Plaintiff's residual functional capacity, and as part of that finding, determined Plaintiff's exertional limitations (the "seven strength demands") with more than sufficient clarity for this Court to perform a substantial evidence review.

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.[6]

(Pleading No. 11 at 12, *citing* 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2004).) By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) (emphasis added).

In this case, Dr. Cabbell's July 5, 2001 treatment note, to which Plaintiff refers in her brief, reads as follows:

> [Plaintiff] still has back pain and just has to work through it. I do believe at this point in time that I can put her on a prn return basis. Her deficit would be equal to approximately 7%. I don't think that she can continue working if she is going to have a hopefully pain-free life in the future *where she has to bend, lift or twist to do a significant portion of her job. She would be much better at a desk job or a sedentary type job where lifting, bending, squatting, stooping are not components of that job.*

(Tr. at 133)(emphasis added). In the first place, the Court notes that Dr. Cabbell clearly states that Plaintiff retains the residual functional capacity to perform gainful employment, with certain limitations. Additionally, Dr. Cabbell's treatment note indicates that the ALJ need adopt all of his recommendations only if Plaintiff is to lead a completely "pain-free life." However, it is well established in the Fourth Circuit that the inability to work without some

---

[6] Under the regulations, the factors to be used in assessing the opinions of a treating physician are as follows: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of treatment relationship; (iii) supportability; (iv) consistency; (vi) specialization; and (vii) other factors. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2004).

subjective complaints of pain does not of itself render a claimant disabled. *Reedy v. Sullivan*, 749 F. Supp. 737, 741 (W.D.Va.1990), *citing Emmette v. Richardson*, 337 F. Supp. 362, 368 (D.C.Va.1971). Accordingly, the ALJ is not, as Plaintiff appears to believe, required to develop a residual functional capacity for Plaintiff that will result in an absolutely pain-free work environment.

Finally, contrary to Plaintiff's assertions, the ALJ adopted the majority of the recommendations set forth in Dr. Cabbell's treatment note, limiting Plaintiff to sedentary work, where she will be required to lift no more than 10 pounds, to lift and carry small objects only occasionally[7], and to stand and walk no more than two hours out of an eight-hour day. The ALJ also stated that Plaintiff can stoop and crouch only on an occasional basis. Indeed, assuming squatting and crouching are roughly equivalent[8], then the ALJ has addressed *all* of Dr. Cabbell's proposed limitations except twisting and bending, which are laymen's terms, and not postural limitations addressed on a standard residual functional capacity form. Accordingly, the Court finds that the ALJ did not improperly disregard the medical opinion of Dr. Cabbell, the treating physician.

Plaintiff's next argument before the Court is that the ALJ failed to properly evaluate the medical opinion of Dr. Alan A. Rosenbloom, the Consultative Examiner ("CE"), in assessing Plaintiff's residual functional capacity. (Pleading No. 11 at 14-16.) Specifically, Plaintiff notes that the ALJ "neither discussed the limitations reflected in Dr. Rosenbloom's

---

[7] "Occasionally" means occurring less than one-third of the time. *The Dictionary of Occupational Titles, Appendix D*.

[8] "Stooping" is a term used on the residual functional capacity form, "squatting" is not.

-14-

opinion, nor determined what weight should be assigned to the opinion." *Id.* at 16, *citing* tr. at 143; 20 C.F.R. §§ 404.1527(d) & 416.927(d) (2004).[9] This argument is without merit.

The ALJ in this case clearly evaluated Dr. Rosenbloom's opinion, noting that: "[Plaintiff] was diagnosed with low back pain secondary to lumbar disc disease and a history of recurrent spontaneous pneumothoraces post sclerosis of the left hemithorax." (Tr. at 17.) The ALJ also noted that Plaintiff had limitations on her ability to "sit, stand, move about, lift, and carry." *Id.* While the exertional limitations noted by Dr. Rosenbloom lacked sufficient specificity to be truly useful, many were ultimately incorporated into Plaintiff's residual functional capacity of sedentary, which contains significant limitations on lifting, carrying, standing, and walking, as well as additional non-exertional limitations on crouching and stooping. Accordingly, the Court finds that the ALJ's evaluation and application of the CE's medical opinion in determining Plaintiff's residual functional capacity was not in error.

Plaintiff's also argues that the ALJ's failure to include a sit-stand option in Plaintiff's residual functional capacity amounts to reversible error. In support of this contention, Plaintiff once again points to Dr. Rosenbloom's medical report, which, as noted above, states that Plaintiff's "present condition . . . affects her ability to sit, stand, move about, lift, carry." (Tr. at 145.) As Plaintiff herself concedes in her brief, however, *see* Pleading No. 11 at 16, it is unclear from the CE's report whether he is basing these conclusions on medical findings, on Plaintiff's subjective complaints, on his personal observations, or on something else altogether. It does not appear from the CE's report that he was afforded access to Plaintiff's

---

[9] The Court notes that Plaintiff also cited to SSR 96-8p which is clearly incorrect.

-15-

Case 1:04-cv-00714   Document 14   Filed 06/28/05   Page 15 of 18

neurologist's records or to her radiology reports. *See* Tr. at 143-46.[10] Accordingly, the Court finds that Dr. Rosenbloom's statement that Plaintiff's "condition" affects her ability to sit is not well supported by the medical evidence of record. *See* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (2004). Additionally, while Dr. Rosenbloom's report states that Plaintiff's condition affects her ability to sit, his report contains no specific information, making a practical application of his conclusions impossible.[11]

Plaintiff also argues that "[t]he ALJ apparently believed that Plaintiff's ability to sit is limited." (Pleading No. 11 at 17.) This argument, as well, is without merit. Plaintiff appears to be referring to the following sentence in the ALJ's opinion: "While [Plaintiff] *claims* inability to sit for more than 45 minutes at a time, this is not well-documented and would not necessarily preclude sedentary work." (Tr. at 9)(emphasis added). While Plaintiff appears to believe that "the ALJ's own RFC assessment indicates that Plaintiff's ability to sit is limited," this is most definitely not the case. (Pleading No. 11 at 17.) It is clear to the Court that the ALJ's statement in question does no more than dismiss the unsubstantiated portions of Dr. Rosenbloom's Consultative Examination Report – a determination which this Court has already found to be supported by substantial evidence.

---

[10] Additionally, the Court notes that the CE's exam was performed prior to Plaintiff's back surgery. The ALJ notes in his opinion that Plaintiff may have been disabled for a period of time surrounding her May 2003 lumbar laminectomy, but that such period of disability did not continue for a period of one year. (Tr. at 18.)

[11] Indeed, it is possible, based on the wording of Dr. Rosenbloom's statement, that Plaintiff's sitting is affected in such a way that she is required to sit for 6 hours out of an 8-hour workday.

Plaintiff's final argument before the Court is that the ALJ improperly applied the Medical-Vocational Guidelines as a framework for decision making. (Pleading No. 11 at 17-19.) In support of this contention, Plaintiff notes that her ability to perform a full range of sedentary work was eroded because she was limited by the ALJ to occasional stooping and crouching. However, Social Security Ruling 85-15, *Titles II And XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* ("SSR 85-15") states that: "[i]f a person can stoop occasionally . . . the sedentary and light occupational base is virtually intact. . . . This is also true for crouching." Plaintiff also contends that she "likely has nonexertional limitations that the ALJ failed to adequately consider and that would significantly diminish her ability to perform work-related activities." (Pleading No. 11 at 19.) As discussed above at length, however, the residual functional capacity developed by the ALJ is supported by substantial evidence.

Accordingly, the Court finds that the ALJ's decision to apply the Medical-Vocational Guidelines in lieu of eliciting testimony from a vocational expert was not in error.

<u>Conclusion</u>

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment [Pleading No. 10] be denied, that the Commissioner's motion for judgment on the pleadings [Pleading No. 12] be granted, and that the decision of the Commissioner be affirmed.

                                                  /s/ P. Trevor Sharp
                                        United States Magistrate Judge

Date: June 28, 2005

-18-

Case 1:04-cv-00714   Document 14   Filed 06/28/05   Page 18 of 18